Clifford v. Keating.

BENJAMIN CLIFFORD, JR., plaintiff in error, v. EDWARD KEAT-
ING, defendant in error.

*Error to Madison.*

The remote assignor of a promissory note is liable to an action by a remote assignee
of the same, under the statute of Illinois, where diligence has been used to collect
the note of the maker, or an excuse is shown for the want of such diligence.
There is no resemblance between the statute of Illinois, in relation to the liability of
assignors of promissory notes, and those of Virginia and Kentucky, on the same
subject. The manifest intention of the statute of Illinois, is to give the last as-
signee the full benefit of the responsibility of all the endorsers, or assignors.
Where a suit was brought by an assignee of a promissory note against a remote as-
signor, and the cause was removed into the Supreme Court by writ of error, and
the *scire facias* to hear errors was served on the defendant in error, by the first
assignor, who was the sheriff of the proper county: *Held*, that the service was
regular.
In an action by an assignee, against a remote assignor of a promissory note, it is not
necessary to allege in the declaration, that the note is unpaid, where it is averred
that a judgment was recovered against the maker for the amount of the note, and
costs; and it is a sufficient breach to allege that the defendant has not paid the
judgment and costs recovered against the maker.

THIS cause was heard in the Court below, at the September
term, 1841, before the Hon. Sidney Breese. The facts of the
case sufficiently appear in the opinion of the Court, except that
the breach in the declaration did not allege that the note was un-
paid; but it did allege that the defendant had not paid the judg-
ment and costs recovered against the maker upon the note. The
plaintiff brought the cause to this Court, by writ of error.

The defendant in error made affidavit that the *scire facias* to
hear errors was served upon him by Andrew Miller, the acting
sheriff of Madison county, who was the first assignor of the note
upon which the defendant in error was sued, in this case, as assignor,
and moved to quash the return to the same. The motion was over-
ruled.

G. T. M. DAVIS, for the plaintiff in error, cited R. L. 452;
Gale's Stat. 525.

L. TRUMBULL, for the defendant in error:
The endorsee cannot sue a remote endorser at law; there is
no privity of contract between them. Bank U. S. v. Weisiger, 2
Peters 332; Mandeville *et al. v.* Riddle *et al.,* 1 Cranch 290. See
also appendix to 2 Scam.; 3 Porter 112; Toulmin's Dig. Laws
Ala. 69; Laws Ala. 1828, 37; Rev. Statutes Indiana 118; Mc-
Carty v. Rhea, 1 Blackf. 55.

BREESE, Justice, delivered the opinion of the Court:
This was an action of *assumpsit,* brought by the assignee of a
promissory note, against a remote assignor, alleging the insolvency
of the maker, &c. A general demurrer was filed to the declara-

tion, which I sustained at the circuit, without any particular examination of the question presented, and on the implied admission and understanding, that our statute in relation to assigned promissory notes was similar to those of Virginia, Kentucky, and Indiana, on the same subject. The sustaining of the demurrer is assigned here as error. An examination of those statutes, especially those of Virginia and Kentucky, will show that there is no resemblance between them, and therefore adjudications upon them cannot explain our statute, or give to it a construction.

The act of Virginia, passed in October, 1786, (1) provides as follows : " An action of debt may be maintained upon a note or writing, by which the person signing the same shall promise or oblige himself to pay a sum of money, or quantity of tobacco to another. Assignments of bonds, bills, and promissory notes, and other writings obligatory for payment of money or tobacco, shall be valid, and an assignee of any such may, thereupon, maintain an action of debt, in his own name, but shall allow all just discounts not only against himself, but against the assignor, before notice of the assignment was given to the defendant."

The act of Kentucky, approved February 10th, 1798, differs only in its phraseology from that of Virginia just recited. It provides that " All bonds, bills, or promissory notes, whether for money or property, shall be assignable ; and it shall and may be lawful for the assignor of any such bond, bill, or note, to sue for the same in the same manner the original obligee or payee might or could do ; *Provided always*, that the defendant shall be allowed all discounts under the rules and regulations prescribed by law, he can prove at the trial, either against the plaintiff or the original obligee or payee, before notice of the assignment : and *provided always*, that nothing in this act contained shall be so construed as to change the nature of the defence, either in law or equity, that any defendant or defendants may have against the assignee or assignees, or the original assignor or assignors." (2) These assignments may be by separate writing. (3) Under this act it was held in the case of Drake *v.* Johnson, (4) that the assignee could not maintain an action against a remote assignor, for the reason that there is no privity between them. In the case of Wood *v.* Berthoud, (5) it was held that the right of action under this statute, by the immediate assignee against the assignor, arises out of a failure of consideration, where the maker is shown to be insolvent. A failure to coerce payment by suit out of the maker, raises an implied contract to refund the consideration received for the assignment, and it is upon that the assignor is held liable. (6)

Under the act of Virginia, the Supreme Court of the United

(1) Henning's Statutes 359.  
(3) 2 Bibb 83.  
(5) 4 J. J. Marsh. 304.  

(2) 1 Statutes of Kentucky 99.  
(4) Hardin 218.  
(6) Smallwood *v.* Woods, 1 Bibb 545.

Clifford *v.* Keating.

States, in the case of Mandeville *et al. v.* Riddle *et al.*, (1) observes, "that the act is silent with respect to the claim of the assignee against the assignor, and it was long a doubt whether the assignor became liable on his mere assignment, though that doubt was settled in favor of such liability. It was also a question whether the assignee could have recourse to any other than his immediate assignor. As the act of assembly gives no right to sue the assignor, such an action can only be maintained on the promise which the law implies from the assignment, and consequently can only be sustained by and against the persons to and from whom the law implies such a promise to have been made. As the assignment is made to a particular person, the law implies a promise to that person; but it raises no promise to any other. There is no fact on which to imply such promise. In the language of the books, there is a privity between the assignor and his immediate assignee; but no privity is perceived between the assignor and his remote assignee. The implied promise growing out of the endorsement, is not considered as having been made assignable by the act of assembly, and therefore the assignee of that promise cannot maintain an action of *indebitatus assumpsit* on it." The same doctrine is established in the case of Harris *v.* Johnston, (2) in Riddle *et al. v.* Mandeville *et al.*, (3) and all the decisions are collected in a note to the case of the Bank of the United States *v.* Weisiger. (4)

It will be seen that the ground of these decisions is the implied promise growing out of the endorsement or assignment, which may be on a paper or by a writing separate from the note itself, which implied promise is not made assignable by the act, and for that reason, the assignee of that promise cannot maintain an action upon it. The act is not sufficiently broad and comprehensive to give the action to the remote assignee.

The statute of Indiana, passed in 1818, declares that promissory notes, &c., "shall be and they are hereby made assignable by endorsement thereon, under the hand or hands of such person or persons, &c., so as absolutely to transfer and vest the property thereof in each and every assignee or assignees successively," &c., "and such assignee or assignees may have their action or suit against him, her, or them, who endorsed the same, having used due diligence, &c., to obtain the money of the maker," &c.

In the case of Bullitt *v.* Scribner, (5) it was held that assignments of promissory notes are not governed by the law of merchants; and in the case of McCarty *v.* Rhea, (6) it was held that an assignee of a promissory note cannot sue a remote assignor, where the note assigned is not governed by the law of merchants, and reference is made to the case of Drake *v.* Johnston, (7) and

(1) 1 Peters' Cond. R. 314.                (2) 1 Peters' Cond. R. 545.
(3) 2 Peters' Cond. R. 269.                (4) 2 Peters 338.
(5) 1 Blackf. 14.                          (6) 1 Blackf. 55.
(7) Hardin 218.

Clifford *v.* Keating.

Mandeville *et al. v.* Riddle *et al.*, (1) reported in 1 Peters' Cond. R. 314. Reference being made to these cases to support the decision by the Supreme Court of Indiana under the statute of that State, is an acknowledgment that it is similar to the statute of Virginia; that it is no more comprehensive in its terms than that statute; and as no action is given to the last assignee against a remote assignor, by the act, the implied promise arising out of the endorsement not being assignable, the assignee of that promise could not maintain the action.

Let us now examine our statute upon the subject, for it is by it that this question is to be decided. The right to assign paper of this description, so as to vest the property and the action in the assignee, is not a common law right, but depends wholly upon statute.

Our statute provides in the first section, after stating the legal effect and consequences of making promissory notes, bonds, due bills, &c., that " Any such note, bond, bill, or other instrument in writing, made payable to any person or persons, shall be assignable by endorsement thereon, under the hand or hands of such person or persons, and of his, her, or their assignee or assignees, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee or assignees successively." It then provides that the assignee may institute and maintain the same kind of action against the maker, that the payee or obligee might have maintained. The second section declares that "Every assignor or assignors, or his, her, or their heirs, executors, or administrators of every such note, bond, bill, or other instrument in writing, shall be liable to the action of the assignee or assignees thereof, or his, her, or their executors, or administrators, if such assignee or assignees shall have used due diligence by the institution and prosecution of a suit against the maker," &c., with a proviso, that if the institution of such suit would have been unavailing, or that the maker or makers had absconded or left the State, when such assigned note, &c., became due, the assignee may recover against the assignor, as if due diligence by suit had been used. A marked difference will be at once perceived between this act and the others cited, out of which the decisions referred to have arisen.

A fair construction of this statute, excludes the idea of a right of action accruing to the assignee out of the implied promise growing out of the endorsement, for it is expressly provided that every assignor or assignors shall be liable to the action of the assignee or assignees of every such note, if due diligence has been used against the maker, or an excuse for want of diligence shown. This is not the provision in the statute of Indiana, nor is there any similar provision in any statute to which reference has been made. The

(1) 1 Cranch 290.

manifest intention of our act is, to give the last assignee the full benefit of all the assignments. The policy of such an enactment is obvious. Such being the condition of the last assignee, paper of this description gains more credit in community. Such paper is not taken on the faith of the maker, but upon the faith of the endorsements. They are looked to as the means by which the note is to be paid. The condition of the last assignee, if he had no remedy against his remote assignor, would not be improved at all by a multitude of assignments. The first assignor, by placing his name upon the note, gives it the weight of that name in community; he gives the note character; he declares, by his endorsement, to all to whom the note may come, in a fair course of business, that the maker is able to pay it; and if he is not able and does not pay, after due diligence is used to coerce it, that then, in that event, he will pay it. This is the contract which he makes with every person who may become the owner of the note by assignment; not only with his immediate assignee, but with all subsequent assignees, and is made liable on such contract by the express terms of the second section of our statute. Every assignor shall be liable to the assignee. Such liability is several and attaches in favor of each assignee. An express liability being thus created by the act, it is unnecessary there should be a privity of contract between the remote assignor and the last assignee. The reasoning of the several courts, then, whose decisions have been cited as having been made on the statutes of Virginia and Kentucky, has no weight in this case. The promise or contract growing out of the endorsement, is, by our act, made assignable, and, therefore, the assignee of such a promise or contract can maintain an action upon it. The endorsement is on the paper itself; it accompanies it every where, and by successive assignments, in the same way, each one becomes a contract of the same character, to pay to the last assignee, in case the maker is unable to pay. He is to have the benefit of each and every assignment. If this were not the case, the situation of the last assignee would be hopeless, with an insolvent maker, and intermediate assignors in the same condition, although there be a good assignor upon the note. This consideration of itself would determine the question of the liability of a remote assignor.

Some objections were taken on the argument to the declaration. We think the allegations therein are sufficiently technical and correct. The cause of action, liability of the defendant, and breach, are well stated. The judgment is therefore reversed, and the cause remanded, with leave to the defendant below to withdraw the demurrer and plead.

*Judgment reversed.*

*Note.* The statutes of Virginia, Kentucky, and Indiana, and all the decisions under them, are collated in the appendix to 2 Scam. 579. *See* the case of Hilborn *v.* Artus *et al.*, *Post.*